# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

KATHERINE SCHUMANN,           )   No. ED CV 07-01181-RGK (VBK)
                              )
            Petitioner,       )   MEMORANDUM AND ORDER DENYING
                              )   PETITIONER'S REQUEST FOR A STAY
      v.                      )
                              )
DEBRA PATRICK,                )
                              )
            Respondent.       )
_____)

## **INTRODUCTION**

On September 17, 2007, Katherine Schumann (hereinafter referred to as "Petitioner") filed a "Petition for Writ of Habeas Corpus by a Person in State Custody," pursuant to 28 U.S.C. §2254 ("Petition"). Petitioner raised the following claims: (1) multiple instances of instructional error denied Petitioner due process and a fundamentally fair trial; (2) denying Petitioner effective assistance of counsel compels reversal; (3) the trial court abused its discretion in denying defense counsel's motion for a new trial and thus reversal and remand for a new trial is required; and (4) Petitioner joins in all issues raised by her co-defendant that may accrue to her benefit. (See Petition at 5-6 and attached pages.) Concurrently, Petitioner filed a "Motion to Stay and

Abey Federal Habeas Proceedings until State Remedies Exhausted." Petitioner alleged that on July 13, 2007, she filed a habeas petition in the California Supreme Court[1] with the following claim: "New evidence that was not introduced with a motion for new trial.  Violation of the Fourteenth Amendment and <u>Lilly v. Virginia</u>, 527 U.S. 116 (1999)... Association with co-defendant.  Likely confusion resulting from evidence on multiple counts conflicting defenses or the possibility that at a separate trial a co-defendant would give exonerating testimony." (<u>See</u> "Motion for Stay" at 1; Lodgment 12.)

On September 24, 2007, the Court issued a Minute Order ordering Respondent to file an Opposition or Statement of Non-Opposition to Petitioner's Motion to Stay.  The Court also issued an Order re Further Proceedings.

On November 13, 2007, Petitioner filed a "Motion: to Show Proof of Denial Letter to Continue to Exhaust State Remedies; Requesting Status on Motion to Stay and Abey Federal Habeas Proceedings Until State Remedies Exhaust."[2]  Petitioner attached an "Order Denying Petition for Writ of Habeas Corpus"[3] filed on October 24, 2007 in the San Bernardino

---

[1]   Petitioner filed this Petition in the San Bernardino County Superior Court. (<u>See</u> Lodgment 12.)

[2]   The Court **HEREBY DEEMS** Petitioner's Motion Moot in light of the within Memorandum and Order.

[3]   The Court in its denial noted that Petitioner may not raise as grounds in a habeas petition those issues already litigated in her direct appeal.  The Court further noted that Petitioner had filed three letters allegedly from her co-defendant, Vance; however, the letters were not in the form of an affidavit or declaration and it appeared that Petitioner was in possession of them years before.  The Court found no justification for the unreasonable delay in presenting them, and more importantly did not show Petitioner's innocence.  Petitioner's claims of ineffective assistance of counsel, and misuse of co-defendant's statements were already considered and rejected.

County Superior Court. (Lodgment 14.)

On January 9, 2008, Petitioner filed a second "Motion to Stay and Abey Federal Habeas Proceedings Until State Remedies Exhausted."  On January 24, 2008, the Court issued a Minute Order advising Petitioner that her Motion for Stay was already under submission and ordering Respondent to file an Opposition or Statement of Non-Opposition to the "Motion to Stay."

On February 21, 2008, Respondent filed an Answer to Petition.

On February 22, 2008, Respondent filed a "Response in Opposition to Motion to Stay Habeas Proceedings."

On April 1, 2008, Petitioner filed a "Motion to Object Petition for Writ of Habeas Corpus and Memorandum of Points and Authorities (Denial on Allegations)."

Having reviewed the Petition, Petitioner's Motions to Stay Abey Federal Habeas Proceedings Until State Remedies Exhausted, Respondent's Answer and  Opposition to Motion to Stay and Petitioner's Response, the Court **HEREBY DENIES** Petitioner's Motion for a Stay.


## **PRIOR PROCEEDINGS**

Following a joint trial with separate juries in the San Bernardino County Superior Court, Petitioner and co-defendant Gregory Vance, Jr. were convicted of first degree murder in violation of California Penal Code ("PC") §187 and first degree residential burglary in violation of PC §459.  The jury returned a verdict of not guilty for Vance on an unrelated residential burglary.

In a bifurcated proceeding, Vance admitted the prior Strike conviction and two prior prison term convictions alleged against him in the second amended information.

Petitioner and Vance were sentenced on September 23, 2004. The court sentenced Vance to 56 years to life in state prison. Petitioner was ordered to serve 25 years to life in state prison. Pursuant to PC §654, the state trial court stayed the consecutive sentences for the burglary count.

Both Petitioner and Vance appealed their convictions. On August 4, 2006, the California Court of Appeal affirmed the Judgment in its entirety. (Lodgment 8.) The California Court of Appeal rejected the claims raised by Petitioner in her direct appeal: alleged instructional errors, alleged ineffective assistance of counsel, and alleged erroneous denial of motion for new trial – as without merit. The California Court of Appeal further found: "Petitioner joins Vance's contentions insofar as they may benefit her. None of Vance's contentions benefit Petitioner independently of her own contentions." (Lodgment 8 at 3, n. 5.)

With respect to Vance, the California Court of Appeal rejected as without merit all of his claims, i.e., the challenge to the instruction given to his jury that defined burglary for the application of the felony rule; alleged denial of Vance's right to counsel at the sentencing hearing because of the "pro forma" appointment of new counsel for him; and alleged insufficiency of the evidence of Vance's prior Strike and prison prior convictions. (While the California Court of Appeal denied all of Vance's substantive claims, it granted Vance's request to correct his Abstract of Judgment to show his conviction for first degree residential burglary in count two was by a jury trial, instead of by a plea.)

Petitioner filed a Petition for Review in the California Supreme Court, alleging instructional error, ineffective assistance of counsel, and abuse of discretion in the denial of her motion for new trial.

(Lodgment 10.)

The California Supreme Court summarily denied Petitioner's and Vance's Petitions for Review on November 1, 2006. (Lodgment 11.)

On July 13, 2007, Petitioner filed a Petition for Writ of Habeas Corpus in the San Bernardino Superior Court.  Petitioner raised the claim of ineffective assistance of counsel for failing to submit the "new evidence" (letters from co-defendant Vance) which Petitioner contends proves her innocence and other claims that mirrored those that had been previously rejected as without merit by the California Court of Appeal and the California Supreme Court. (Lodgment 12.)

On October 24, 2007, the San Bernardino Superior Court issued a two-page Order Denying the Petition for Writ of Habeas Corpus.  The state trial court determined that "Petitioner's alleged contentions are all without merit and by and large were addressed during her appeal." (Lodgment 14 at 2.)

Petitioner does not presently have a habeas petition pending in the California Supreme Court.[4]

## PETITIONER'S MOTION FOR A STAY IS DENIED

Petitioner seeks to return to state court to exhaust a claim that "new evidence that was not introduced with motion for new trial. Violation of the Fourteenth Amendment right... Association with co-defendant likely confusion resulting from evidence on multiple counts conflicting defenses or the possibility at a separate trial a co-

---

[4]   Petitioner erroneously indicated in her Motion for a Stay filed on September 17, 2007 that she had a habeas petition pending in the California Supreme Court; however, this petition was filed in the San Bernardino County Superior Court on July 13, 2007 and denied on October 24, 2007.

defendant would give exonerating testimony." (See "Motion for Stay" at 1.)

In Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528, 1535 (2005), the United States Supreme Court held that a federal district court may stay a mixed habeas petition to allow a petitioner to present unexhausted claims to the state court. A District Court should stay, rather than dismiss, a mixed habeas petition if the Petitioner has good cause for his failure to exhaust, his unexhausted claims are meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. Id. at 278.

In Rhines, the Supreme Court noted that because of the total exhaustion requirement in Rose v. Lundy, 455 U.S. 509, 518-19, 102 S.Ct. 1198 (1982) and AEDPA's one-year statute of limitations, petitioners with mixed petitions "run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Rhines, 125 S.Ct. at 1533. This risk arises because a petitioner could be faced with a choice of either striking his unexhausted claims and going forward with an exhausted petition or allowing the whole petition to be dismissed, without prejudice, as mixed. Under the first option, if Petitioner's original petition had already been decided on the merits, he could not include the newly exhausted claims in a subsequent petition, as the second petition would be subject to the strict limitations AEDPA places on successive petitions. See 28 U.S.C. §2244(b). The second option available under Rose is no more desirable for a petitioner given the fact that AEDPA's one-year statute of limitations will likely have run before a petitioner is able to fully exhaust state court remedies on the mixed petition and return to federal court. Rhines, 125 S.Ct. at 1533-34.

1    In light of the above circumstances, <u>Rhines</u> concluded that a
2    District Court has discretion to stay a mixed petition to allow a
3    petitioner time to return to state court to present unexhausted claims.
4    In making this determination, however, the Court held that the stay and
5    abeyance procedure must be applied consistently with AEDPA's twin
6    purposes: "reducing delays in the execution of state and federal
7    criminal sentences" and encouraging "petitioners to seek relief from
8    state courts in the first instant." <u>Rhines</u>, 125 S.Ct. at 1534.  As a
9    result, <u>Rhines</u> cautioned, a stay and abeyance should be available only
10   in limited circumstances, and is appropriate only when the District
11   Court determines that there was "good cause" for the failure to exhaust.
12   <u>Rhines</u>, 125 S.Ct. at 535.

13   In <u>Rhines v. Weber</u>, the Supreme Court did not explain what showing
14   would satisfy the requirement that a habeas petitioner demonstrate "good
15   cause" for a prior failure to exhaust.  However, the law is well
16   developed regarding the showing necessary to satisfy the analogous
17   requirement that a habeas petitioner demonstrate "cause" to excuse a
18   failure to exhaust in the context of procedural default. (<u>See</u> <u>Hernandez</u>
19   <u>v. Sullivan</u>, 397 F.Supp.2d 1205, 1207 (C.D. Cal. 2005).)  In determining
20   both the "cause" required to excuse a procedural default and the "good
21   cause" required under <u>Rhines v. Weber</u>, the relevant inquiry is the
22   petitioner's justification for failing to exhaust his or her other
23   claims prior to filing a federal habeas petition.   <u>See</u> <u>Noble v.</u>
24   <u>Harrison</u>, 491 F.Supp.2d 950,956 (C.D. Cal. 2007).

25   Here, Petitioner essentially is arguing that she is entitled to
26   return to state court and exhaust a "newly discovered claim" of three
27   letters from co-defendant Vance to Petitioner, which she claims are
28   exculpatory and prove her innocence. (Lodgment 12.)

1    Assuming _arquendo_ Petitioner could demonstrate good cause for her
2    failure to previously exhaust the "new evidence" claim, Petitioner has
3    failed to demonstrate that this additional claim is potentially
4    meritorious.

5    The new evidence that Petitioner presented to the San Bernardino
6    County Superior Court in her habeas petition consists of three letters
7    from co-defendant Vance to Petitioner, which she claims are exculpatory
8    and prove her actual innocence. (See Lodgment 12.)  In his letters,
9    Vance discussed the burglary and murder of the victim Ellis.  While
10   Vance's hearsay statements reiterate Petitioner's limited involvement in
11   the stabbing, nowhere in the letters is there any claim that Petitioner
12   was not present at the time of the robbery and murder.  At the joint
13   trial with separate juries, Vance testified that the victim Ellis
14   attacked him and that Vance and Petitioner had no intention to hurt
15   anyone. (RT 645-760.)  Thus, Vance already testified about Petitioner's
16   conduct on the night of the victim's murder.

17   Even assuming that Vance's letters would be somehow admissible,
18   they fail to negate Petitioner's culpability of the first degree felony
19   murder of the victim Ellis.  California law provides that "a non-killer
20   participant in the felony can be liable for the homicide committed by
21   another when there is both a casual and temporal relationship between
22   the underlying felony [burglary in Petitioner's case] and the act
23   resulting in death." People v. Cavitt, 33 Cal.4th 187, 91 P.3d 222
24   (2004).  In Petitioner's case, eyewitness testimony presented at the
25   state trial established that both Petitioner and Vance, on October 23,
26   2001, at about 1:00 a.m., each brandishing a knife, confronted three
27   men, yelling and asking for their money.  Vance and Petitioner accosted
28   Christopher Daniels ("Daniels")between his car and Curtis Fanning's

("Fanning")car, and told Daniels, "You're going to come with us." (RT 189.)  Daniels was scared and did not want to go with Vance and Petitioner; he asked Fanning to accompany him. (RT 190.)  Fanning agreed to go because he "didn't want nothing to happen" to Daniels. (RT 190-191.)  Daniels and Fanning were forced to drive Petitioner and Vance to the victim Ellis's house. (RT 186-187-211.)

Fanning testified that when they arrived at the victim Ellis's house, Petitioner went up and stood by the front door.  Vance stood by a window on the side of the house. (RT 193, 196-197.)  Fanning stayed in the car talking with Daniels. (RT 197.)  Fanning saw Petitioner go inside the house.  He lost sight of Vance. (RT 197.)  Fanning heard yelling sounds coming from the house. (RT 197-199.)  Fanning heard Vance say inside the house, "Do not mess with me.  I told you not to mess with me." (RT 199.) Fanning then saw Petitioner run out of the house and jump back in the car. (RT 200.)  Vance, who had a knife in his hand as he was getting into the car and had blood on his jacket, repeatedly said, "I got fucking blood on my hands." (RT 232.)

Fanning testified as they drove away from Ellis's house, he saw Vance and Petitioner throwing their knives by the gutter sewer drains on Baseline Street. (RT 202-203.)  Vance and Petitioner were dropped off by Fairfax Street. (RT 204.)

Daniels, who actually drove Petitioner and Vance to Ellis's house, and pled guilty to accessory to Ellis's murder and two counts of forgery, testified he, Fanning and Clifford James were smoking marijuana inside Daniels' car when Vance and Petitioner approached them on the night of the crimes. (RT 240, 272-273.)  Vance pulled out a six-inch steak knife  and waved it at Daniels, who was in the driver's seat. (RT 242.)  Vance asked the group, "Where's my fucking money?" (RT 242.)

Petitioner approached the passenger side waving a knife and told Daniels, who had jumped out of the car by the passenger side to "Get back." (RT 243-245.) Daniels moved back toward the center of the house. Petitioner repeatedly yelled at him, "Where's our fucking money?" (RT 245.) Daniels testified he saw Vance waving his knife while arguing with James. (RT 246.) Vance said he was going to Benzo's house to get his money from Benzo (i.e., victim Ellis). (RT 246, 270.) Vance told Daniels to get in the car and drive him to Benzo's house. (RT 247.) Petitioner said, "Yeah let's go." (RT 247.) Daniels testified he complied because he was scared. (RT 248.)

The California Court of Appeal found that "the testimony of James, Fanning and Daniels consistently showed that Petitioner and Vance both entered Ellis's house with intent to take Ellis's money, and that [Petitioner] both directly perpetrated a burglary of Ellis's house and aided and abetted Vance in the burglary of Ellis's house. The 911 call also showed that Ellis was stabbed after Vance entered the house. Thus, the evidence clearly showed that [Petitioner} was guilty of both burglary and burglary felony murder, notwithstanding Vance's statements and trial testimony." (Lodgment 8 at 39.)

In addition, the California Court of Appeal remarked that "[Petitioner's] testimony showed, that no one except [Petitioner] and Vance went into Ellis's house, and Vance had an opportunity to stab Ellis before he left the house." (Id. at 30.) Further, the California Court of Appeal noted that "Petitioner also admitted that she threw two knives out of the car as the group was leaving Ellis's house." (Id.)

Despite Petitioner's protestations, the evidence at trial established that both Vance and Petitioner entered the victim's house with the intent to take his money and that Petitioner both directly

committed the burglary of Ellis's house and she also aided and abetted Vance in the burglary of Ellis's house. The evidence defining Petitioner as a burglar inescapably points to her guilt for the murder of Ellis and the "new evidence" which does not negate her presence inside Ellis's house, does not eliminate her culpability for murder. As well explained by the California Court of Appeal, "Petitioner's jury was instructed that 'the unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission of the crime of burglary, is murder of the first degree when the perpetrator had the specific intent to commit that crime.'" (CALJIC No. 8.21.) Petitioner's jury also was instructed that, "In order to be guilty of murder as an aider and abettor to a felony murder, the accused and the killer must have been jointly engaged in the commission of the burglary at the time that the final wound was inflicted." (CALJIC No. 8.27.) (Lodgment 8 at 26-27.)

In view of these instructions, in finding Petitioner guilty of burglary, a burglary that Petitioner either directly perpetrated or aided and abetted and the fact that Ellis was clearly killed in the commission of the burglary, a burglary felony murder conviction was inescapable. As discussed, an unlawful killing in the commission of a burglary is first degree murder..." (Lodgment 8 at 26-27.)

Even if Petitioner could show that good cause exists for her failure to diligently pursue her claims through the state court, she has failed to show that the unexhausted claim containing "new evidence" of Vance's letters purporting to exonerate Petitioner is potentially meritorious. Accordingly, Petitioner's request for a stay and abey should be denied.

## <u>ORDER</u>

**IT IS HEREBY ORDERED** that Petitioner's Request for a Stay is **DENIED.** The Court will in a separate Report and Recommendation address the merits of the Petition.


DATED: August 13, 2008                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE